```
            UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

ALFRED ARCIDI,
    Plaintiff,

    v.                                                CIVIL ACTION NO.
                                                      05-10120-PBS

J. OWEN TODD; KEVIN T. PETERS
    d/b/a Todd & Weld, LLP,
    Defendants.

**REPORT AND RECOMMENDATION RE:
DEFENDANTS' MOTION TO DISMISS AND/OR STAY PROCEEDINGS
(DOCKET ENTRY # 3)**

**August 9, 2005**

**BOWLER, U.S.M.J.**

    Pending before this court is a motion filed by defendants J. Owen Todd and Kevin T. Peters d/b/a Todd & Weld, LLP ("defendants") to dismiss and/or stay (Docket Entry # 3) the proceedings brought by plaintiff Alfred Arcidi ("Arcidi"). Defendants are partners in the Massachusetts law firm of Todd & Weld, LLP. Plaintiff opposes the motion. (Docket Entry # 4). On April 11, 2005, this court heard argument on the motion and took the matter under advisement.

## BACKGROUND

    This action arises in connection with a dispute between Arcidi and defendants that began in September of 2003 in the Massachusetts Superior Court Department (Suffolk County)

("Suffolk Superior Court"), Civil Action No. 03-4219-BLS ("the state court action"). The state court action is presently ongoing in Suffolk Superior Court.

In December of 2000 Arcidi retained the legal services of defendants in connection with a lawsuit filed against him. The lawsuit centered on the prospective purchase and management by Arcidi and his business partners of Caruso Music, Inc. and Foods, Inc. of Saugus, Massachusetts. In retaining the services of defendants, Arcidi signed an engagement letter which contained a provision calling for arbitration in the event of a disagreement over fees. That provision called for any disagreement concerning the amount owed for legal services to be submitted for resolution to the Fee Arbitration Board of the Massachusetts Bar Association. (Docket Entry # 3, Ex. 1, ¶ 5).

In the course of the representation a dispute arose between Arcidi and defendants regarding the amount owed for legal services. Arcidi refused at that time to submit to arbitration. Pursuant to the engagement letter, therefore, defendants initiated the state court action in Suffolk Superior Court on September 2, 2003, seeking to compel Arcidi to submit to arbitration pursuant to Massachusetts General Laws, chapter 251, section two. (Docket Entry # 3, Ex. 1). On November 3, 2003, Arcidi filed an answer and counterclaim to defendants' action. (Docket Entry # 3, Ex. 2). Arcidi's counterclaim sued for

damages, alleging that defendants had engaged in attorney malpractice and "unfair and deceptive trade practices." (Docket Entry # 3, Ex. 2). On March 19, 2004, an Associate Justice of the Suffolk Superior Court ("state court judge") issued an Order directing the parties to proceed to arbitration before the Fee Arbitration Board and, in addition, staying the proceedings on the malpractice counterclaim. (Docket Entry # 3, Ex. 3).

Following arbitration proceedings, the Fee Arbitration Board entered an award for defendants in the amount of $277,932 on December 20, 2004.[1] (Docket Entry # 3, Ex. 4). Pursuant to state law, either party has 30 days from the time of receipt of the award in which to file a judicial appeal of the award. Mass. Gen. L. ch. 251, § 12(b). Arcidi alleges he received his copy of the award on December 24, 2004, and so the filing of this action in this court on January 20, 2005, would ordinarily be considered timely applying Massachusetts law.[2] On December 28, 2004, Arcidi filed a motion to amend his counterclaim in Suffolk Superior Court, seeking to have the award of the Fee Arbitration Board vacated or modified or "that there be a revocation of the arbitration contract" and asserting an additional basis for

---

[1] In the complaint filed in this court (Docket Entry # 1), Arcidi asserts that the Fee Arbitration Board awarded defendants $277,733, but a copy of the actual award filed with defendants' motion to dismiss indicates that the award was for $277,932. (Docket Entry # 3, Ex. 4).
[2] As discussed infra, neither party disputes the application of Massachusetts state law.

relief pursuant to the original malpractice counterclaim. (Docket Entry # 3, Ex. 5). The additional basis alleged that defendants improperly filed a counterclaim during the course of their representation of Arcidi in state court, and that the improper pleading of the counterclaim, which allegedly had damages in excess of $1,000,000, resulted in its dismissal. On January 19, 2005, Arcidi withdrew the motion to amend the counterclaim, writing that "the issues presented in the Motion to Amend actually involve supplemental issues to the pleadings in this Action and do not establish a need for amendment." (Docket Entry # 3, Ex. 6).

The very next day, however, on January 20, 2005, Arcidi filed this federal action in the United States District Court for the District of Massachusetts seeking to have the arbitration award vacated or modified or "that there be a revocation of the arbitration contract" and, in addition, seeking damages for attorney malpractice. (Docket Entry # 1). The sole allegation of attorney malpractice contained in the complaint filed in this court (Count One) corresponds verbatim to the above noted allegation regarding defendants' improper filing of the underlying counterclaim that Arcidi initially sought to add to the counterclaim in Suffolk Superior Court but which he subsequently withdrew on January 19, 2005.

On February 2, 2005, defendants filed a motion in Suffolk

Superior Court requesting that the court confirm the award of the Fee Arbitration Board and that the stay regarding the malpractice claim be lifted.  The motion was subsequently allowed by the state court judge on March 14, 2005.

On March 3, 2005, defendants filed the motion presently before this court, seeking to have this court abstain from exercising jurisdiction over Arcidi's claims regarding the arbitral award and, in addition, requesting that this court abstain from exercising jurisdiction over Arcidi's malpractice claim.  Alternatively, defendants request that this court stay Arcidi's malpractice claim pending the outcome of the proceedings presently ongoing in Suffolk Superior Court.

## DISCUSSION

A.  <u>Abstention vis-à-vis Arbitral Appeal</u>

In the complaint filed in this court, Arcidi requests that this court modify, vacate or revoke the arbitration contract he signed in the engagement letter retaining the legal services of defendants.  (Docket Entry # 1).  Given the facts presently before this court, it appears that the legal representation performed by defendants did not involve interstate commerce.[3]  It is therefore not governed by the Federal Arbitration Act, 9

---

[3] Neither party alleges that the underlying legal representation involved interstate commerce.  Additionally, the filings before the court do not permit the inference that it did.

5

U.S.C. §§ 1-16 (1994) ("FAA").  Section two of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Section one defines "involving commerce" to require that the commercial activity amount to "commerce among the several States."  9 U.S.C. § 1.  This definition has been interpreted by the Supreme Court to be the "functional equivalent" of the familiar test of "affecting [interstate] commerce."  Citizens Bank v. Alafabco, 539 U.S. 52, 56 (2003).

Given that the underlying legal representation did not affect interstate commerce, and the consequent absence of federal question jurisdiction, Arcidi's claim is governed by state law. Although the filings before this court do not indicate where the contract was signed, or whether the contract contained a choice of law or choice of forum provision, neither party disputes that this case is to be governed by the Uniform Arbitration Act for Commercial Disputes, Massachusetts General Laws chapter 251, §§ 1-19 (2002) ("chapter 251").  A federal court sitting in diversity applies the substantive law of the state in which it sits.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); 28 U.S.C. § 1652.  The substantive provisions of chapter 251

therefore apply, and ultimately dictate that this court abstain from resolving the arbitration claim.

The underlying dispute between the parties began in Suffolk Superior Court when defendants sought to compel Arcidi to submit to arbitration, but Arcidi has chosen to file a separate action in this court challenging the award of the Fee Arbitration Board. Chapter 251 contains an explicit, though perhaps highly unusual, mechanism that, given the circumstances of this case, weighs in favor of this court abstaining from interfering in the arbitral proceedings presently ongoing in state court.

Section two of chapter 251 provides that "[a] party aggrieved by the failure or refusal of another to proceed to arbitration under an agreement [to arbitrate] *may* apply to the superior court for an order directing the parties to proceed to arbitration." Mass. Gen. L. ch. 251, § 2 (emphasis added). Section 15 of chapter 251 further provides that "an application to the court under this chapter shall be by motion . . . [N]otice of an initial application for an order shall be served in the manner provided by law for the service of an original writ of summons." Mass. Gen. L. ch. 251, § 15. When, therefore, defendants filed their initial complaint in Suffolk Superior Court on September 2, 2003, requesting the court to issue an order compelling the parties to proceed to arbitration, they made an "application" for the purposes of chapter 251. Crucially,

however, section 17 of chapter 251 directs that "[a]ll *subsequent* applications shall be made to the court hearing the initial application unless the court otherwise directs."  Mass. Gen. L. ch. 251, § 17 (emphasis added).

Recognizing that defendants' complaint of September 2, 2003 filed in Suffolk Superior Court was the "initial application" for the purposes of chapter 251, it becomes evident that the statute explicitly requires all "subsequent applications" within the ambit of chapter 251 be directed to Suffolk Superior Court unless that court directs otherwise.  At no time during the proceedings in Suffolk Superior Court did the state court judge direct that subsequent applications be directed to any other court.  Moreover, the state court judge was well aware of the proceedings initiated in this court at their inception and he never directed, nor was he asked to direct, that subsequent applications be directed to this court.  Indeed, in the course of noting that Arcidi had filed this action before this court, the state court judge wrote, "[n]either jurisdiction, nor venue, has shifted to the Federal Court on the applications and issues relating to whether the arbitral award should be confirmed or vacated."

In certain rare circumstances it is appropriate for a federal district court, "in its sound discretion," to abstain from exercising its jurisdiction.  Burford v. Sun Oil Co., 319 U.S. 315, 317 (1943).  Although the doctrine of abstention is "an

extraordinary and narrow exception" to the duty of a court to consider a case properly before it, the present case justifies abstention. County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 (1959). The justification of abstention ordinarily involves federalist principles of avoiding friction between state and federal systems. See, e.g., Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 708 (1996). As explained above, section 17 evidences an explicit intent on the part of the Massachusetts legislature to confine arbitration proceedings to the court wherein the initial application was first filed. Mass. Gen. L. ch. 251, § 17.

    Abstention may be justified in cases where the federal district court has been asked to interfere in a complex state administrative scheme. Burford, 319 U.S. at 325. In Burford the Sun Oil Company brought suit in federal district court, invoking the court's jurisdiction because of diversity of citizenship between the parties, and sought to attack the validity of an order of the Texas Railroad Commission. In considering whether the action constituted an "appeal" from the Commission's ruling, where Texas state law authorized such appeals to the state courts of Texas, the Supreme Court wrote that "the Texas legislature may not make a federal district court into an appellate tribunal or otherwise expand its jurisdiction, and the Circuit Court of Appeals in its decision correctly viewed this as a simple

proceeding in equity to enjoin the enforcement of the Commission's order." Burford, 319 U.S. at 317.

Given the unique procedural posture of the case at bar, consideration by this court of Arcidi's claims regarding the arbitral dispute would create the risk of improperly converting this court into an appellate court. To begin with, Arcidi's complaint seeks to have this court revoke the original arbitration contract, an issue which was already dealt with in the state court action when the state court judge determined that the engagement letter signed by Arcidi did indeed require that he arbitrate his fee dispute with the defendants before the Fee Arbitration Board. (Docket Entry # 3, Ex. 3). This court is not in a position to review the construction of a contract already undertaken and affirmatively ruled upon by the state court judge. To do so would amount to an assault upon the authority of the state court system and a declaration that the mere happenstance of diversity jurisdiction subjects the decision of a state trial court to the appellate review of a federal district court. As in Burford, where Sun Oil sought to forestall the judgment of the Texas Railroad Commission by running into federal district court, Arcidi's attempt to have this court set aside the arbitration contract is a brazen attempt to do an end-run around the state court system and enjoin the judicial enforcement of the substantial judgment entered against him by the Fee Arbitration

10

Board.  Burford, 319 U.S. at 317.

Additionally, Arcidi seeks to have this court vacate the award of the Fee Arbitration Board.  Once again, however, the unique procedural posture of this case runs the risk of converting this court into an appellate court should this court deign to consider Arcidi's request to have the award vacated.  With the award of the Fee Arbitration Board having been handed down, defendants sought to have the award confirmed by the state court judge in February of 2005.  The award was subsequently confirmed by the state court judge on March 14, 2005.  During this time, the state court judge was fully aware of the proceedings before this court but properly exercised his authority to confirm the award of the Fee Arbitration Board.

Although Arcidi's appeal of the arbitration award to this court was timely, the state court judge was not in error in confirming the award: he was not asked to stay his hand and no appeal was properly before him owing to the clear requirement of chapter 251 that such an appeal be brought before him and no other court.  In fact, the state court judge had no choice but to confirm the award:  section 11 of chapter 251 directs that "upon application of a party, the court shall confirm an award" unless an appeal has been filed. Mass. Gen. L. ch. 251, § 11.  The confirmation of the arbitral award is of paramount importance to the resolution of the case at bar:  where an arbitration award

11

has been properly confirmed, that award is final and binding upon the parties and cannot be subjected to further judicial review. Sarvis v. Cooper, 665 N.E.2d 119, 121 (Mass. App. 1996); see also Glenn Acres, Inc. v. Cliffwood Corp., 228 N.E.2d 835, 840 (Mass. 1967) (noting that Chapter 251 "contemplate[s] that the finality of an arbitrator's award is subject to and dependent upon the entry of a judgment or decree by the court.")

In sum, this court is presented with a final, binding award that has been judicially confirmed by the only court that, according to chapter 251, has the proper authority to consider all applications pertaining to the arbitral award.  For this court now to step in and interfere where Massachusetts law explicitly requires it not to do so would amount to another assault upon the authority of the state judicial system.  As in Burford, it would be inappropriate for this court to interfere with a complex adjudicatory scheme that was designed to function in a specific way.  It is noteworthy here that chapter 251 does not prohibit a chapter 251 claim from being brought to a federal district court:  it merely directs that where a dispute begins, there it must stay, allowing for continuity of venue for all applications pertaining to a chapter 251 matter.  Such continuity, of course, avoids the very problem now presented to this court.

The fact that the arbitral award has been confirmed is of

special significance here.  For this court to undertake a review of the award would interfere with the ability of the Massachusetts judiciary to enforce an award that it already considers validly enforceable.  <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 708 (1996) (noting that the avoidance of friction between state and federal systems is a valid consideration in federal district courts abstaining to exercise jurisdiction).  It is worth noting again here that Arcidi himself brought a timely appeal of the arbitral award before the state court judge only to withdraw that appeal (writing in his motion to amend his complaint that "the issues presented . . . do not establish a need for amendment") and bring it before this court the very next day.  (Docket Entry # 3, Ex. 6).  While this court need not inquire into Arcidi's motives for so doing, it is manifest that Arcidi had every opportunity to contest the arbitral award within the strictures of chapter 251 but ultimately elected not to do so.  This court need not indulge Arcidi's desire to divide the jurisdiction over an arbitration dispute among the courts of the Commonwealth, the obvious effect of which would be to frustrate the ability of defendants to seek final enforcement of the award.  <u>Burford</u>, 319 U.S. at 317.

B.   <u>Defendants' Petition to Have This Court Abstain from Exercising Jurisdiction Over, or, in the Alternative, Issue a Stay Concerning Arcidi's Attorney Malpractice Claim</u>

13

Defendants submit that general principles of abstention[4] should bar consideration of Arcidi's attorney malpractice claim by this court because they were already considered by the Fee Arbitration Board.  Secondarily, they assert that this court should abstain or stay these proceedings out of deference to the ongoing proceedings in the state court action.

Defendants argue that plaintiff's malpractice claim was in fact considered and rejected as part of the arbitration proceedings before the Fee Arbitration Board and is consequently barred from consideration by this court as "moot."  (Docket Entry # 3, pp. 6-7).  It is certainly true that the doctrine of preclusion operates to bar relitigation of claims that were or should have been arbitrated.  Unisys Fin. Corp. v. Allan R. Hackel Org., 676 N.E.2d 486, 490 (Mass.App. 1997).  Such a review, however, cannot be undertaken by the filings presently before this court.  Under Local Rule 7.1(b)(1), a party filing a motion is required in its memorandum of support to include "citation of supporting authorities" as well as affidavits or other documents "evidencing facts on which the motion is based . . .."  LR. 7.1(b)(1).

---

[4]  Defendants do not explicitly state that they seek to apply the doctrine of issue preclusion, but the meaning of their petition is obvious.  In suggesting that the attorney malpractice claim is moot because it was considered and rejected by the Fee Arbitration Board, it is preclusion, not abstention, that would be the operative principle.

14

This court is well aware that Arcidi's malpractice counterclaim is currently pending in Suffolk Superior Court and that at any time a final ruling might be handed down. In the event that such a ruling is given at a time before this court could address the merits of the claim, the doctrine of issue preclusion would almost certainly apply to bar this court's consideration of Arcidi's malpractice claim. Such a final ruling, however, has not yet been handed down. Hence, it is inappropriate for this court to undertake any form of prospective analysis to determine whether plaintiff's malpractice claim filed in this court would be subject to preclusion. G. & C. Merriam Co. v. Saalfield, 241 U.S. 22, 28 (1916) ("Only a final judgment is res judicata as between the parties").

Next, defendants contend that because the case at bar is duplicative of the proceedings in the state court action, "deference to state proceedings" requires that this court abstain from exercising its jurisdiction to hear this matter. (Docket Entry # 3, pp. 6-8). Even supposing this matter is duplicative of state proceedings, however, it is entirely normal for there to be parallel proceedings in both federal and state courts. The mere existence of parallel proceedings does not remove the "duty of a District Court to adjudicate a controversy *properly* before it." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 (1959) (emphasis added). Unlike Arcidi's claim concerning the

15

arbitral award, his claim for attorney malpractice is properly before this court. The general rule is always that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." McClellan v. Carland, 217 U.S. 268, 282 (1910). Indeed, the ruling in McClellan is particularly appropriate to Arcidi's malpractice claims because in McClellan the Supreme Court explicitly rejected an order of the United States District Court for the District of South Dakota entering a stay of proceedings pending before it "until the state court . . . might render a judgment which would be res judicata, and thus prevent further proceedings in the Federal Court." Id. at 282.

Where the jurisdiction of the federal court is properly invoked, therefore, the road to adjudication should be wide and prompt. As the Supreme Court ruled in Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), not even the potential for conflicting results in the two separate forums can justify staying the exercise of federal jurisdiction. Colorado, 424 U.S. at 816. As noted earlier, a final judgment rendered in Suffolk Superior Court regarding Arcidi's malpractice claim would certainly preclude further consideration of the claim in this forum. Accordingly, a judicial stay of proceedings is inappropriate to Arcidi's malpractice claim, and none of the narrow exceptions carved out by the Supreme Court for a proper

application of the doctrine of abstention is applicable to Arcidi's malpractice claim.

The Supreme Court has recognized several separate areas where the doctrine of abstention may reasonably be applied to civil proceedings. These justifications of abstention ordinarily involve federalist principles of avoiding friction between state and federal systems. Quackenbush, 517 U.S. at 708. The most important area of abstention involves avoiding federal litigation regarding unsettled areas of state law. See, e.g., R.R. Comm'n of Tex. v. Pullmann Co., 312 U.S. 496, 500-501 (1941) (noting that abstention may be appropriate to avoid erroneous interpretation of unsettled state law); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 28 (1959). As discussed earlier, abstention may also be justified to avoid interfering with a complex state administrative scheme. Burford, 319 U.S. at 325-327. Finally, abstention may be appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." Allegheny, 360 U.S. at 189.

Clearly, no such exceptional circumstances as contemplated by the doctrine of abstention would apply to a consideration of Arcidi's malpractice claim. In adjudicating such a claim, this court would simply apply state malpractice law and function as

17

any other state court of Massachusetts.  Defendants have failed to convince this court that any perilous hazards of interpreting state law would arise in considering the merits of Arcidi's claim.  Furthermore, no pressing federalist concerns can possibly inhere in the consideration of an ordinary malpractice claim.  Adjudication of this controversy would "present no hazard of disrupting federal-state relations."  Allegheny, 360 U.S. at 189.

## CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[5] that defendants' motion (Docket Entry # 3) be **ALLOWED** with respect to Arcidi's challenge of the arbitral award and **DENIED** with respect to Arcidi's attorney malpractice claim.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[5]  Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation and must identify that portion to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  United States v. Escoboza Vega, 678 F.2d 378-379 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).